INDUSTRIAL ACCEPTANCE CORPORA-
TION v. COREY et al. (No. 12179.)

Court of Civil Appeals of Texas. Fort Worth.
June 15, 1929.

Rehearing Denied July 13, 1929.

McGown & McGown and L. B. Otey, all of
Fort Worth, for appellant.

McCart, Curtis & McCart and M. Kleberg,
all of Fort Worth, for appellees.

BUCK, J. The Industrial Acceptance Cor-
poration, alleged to be a Virginia corporation
with its principal office in Indiana, sued E.
J. Corey, cited by publication, and Robert L.
Greene, alleged to reside in Tarrant county.
For cause of action the plaintiff pleaded that
theretofore, on November 15, 1927, the de-
fendant Corey executed and delivered to the
Carroll-Dillard Company, a corporation, his
certain promissory note in the sum of $1,108,
payable in installments, eleven installments
in the principal sum of $92.33 each and one
installment in the principal sum of $92.37;
said note bearing interest after maturity un-
til paid at the highest lawful rate, and pro-
viding for 10 per cent. as attorney's fees if
placed in the hands of an attorney for collec-
tion. He asked for judgment for the amount
of the debt, together with attorney's fees and
costs, and that the mortgage given to secure
the note be foreclosed on a certain Stude-
baker automobile of the Commander model.
The court appointed M. Kleberg as attorney
for the defendant E. J. Corey, cited by publi-
cation.

The defendant Robert L. Greene alleged:
That the automobile in question had been his
property at all times since October 25, 1927,
owned, held, and claimed by him, free of any
claim of the Carroll-Dillard Company or of
said E. J. Corey or of the plaintiff herein,
and that he has at all times during said time

had possession of said automobile up until the same was sequestered from him as later shown. That the purported sale of the automobile to E. J. Corey and the execution of a chattel mortgage by said Corey to Carroll-Dillard Company was fraudulent and void, inasmuch as said automobile was at all times a part of the stock in trade of the said Carroll-Dillard Company and held and exhibited on its sales floor. That therefore, under article 4000 of the Revised Civil Statutes 1925, said purported mortgage was null and void and of no effect.

The cause was tried before the court without the intervention of a jury, and the court rendered judgment that the plaintiffs should recover nothing as against defendant Robert L. Greene and that said Robert L. Greene should recover the automobile in question as against any claims advanced by plaintiff herein; that defendant E. J. Corey, under the evidence, is liable to plaintiff, but that because of the fact that said defendant is a nonresident of the state of Texas and no process has been served upon him, plaintiff cannot recover anything of said Corey. To this judgment the plaintiff gave notice of appeal.

The court has filed his findings of fact and conclusions of law, which we hereby adopt. The court found: That defendant Robert L. Greene on October 25, 1927, took up the bill of lading and paid the draft representing the purchase money of the car in controversy in this suit, said car being a 1928 model Commander Studebaker roadster automobile which was shipped by the manufacturer to the Carroll-Dillard Company. That on said date said Carroll-Dillard Company made, executed, and delivered to said Robert L. Greene a bill of sale to said car. That by virtue of the taking up of said draft and of the delivery to him of said bill of lading, and of the delivery of said bill of sale to the said Robert L. Greene, he thereby and thereupon was in possession of said automobile, and has thereafter continued in possession of same, either in person or by his agent, until the time of the filing of this suit. That on said October 25, 1927, said Robert L. Greene turned over said automobile to the said Carroll-Dillard Company as his agent, and authorized said agent to sell the same for cash and deliver the cash to him, but that he never authorized said agent to sell said car except for cash, or to sell the same upon deferred payments secured by chattel mortgage on the car. That said car continued in the possession of said Carroll-Dillard Company as the agent of said Robert L. Greene from October 25, 1927, until December, 1927, when plaintiff took the same from defendant by a writ of sequestration. That during all of said time said automobile remained as part of the stock in trade of said Carroll-Dillard Company, and remained upon the floor of said company and was daily and constantly exposed for sale, and was during all of said time part of the stock in trade exposed for sale at all times. That during said time said automobile was never removed or segregated or separated in any way from the stock in trade of said company exposed to daily sale. That in December, 1927, said Greene, with agreement of said Carroll-Dillard Company and its officers, took actual manual possession of said automobile as the owner thereof, and remained in such possession until after the filing of this suit.

From the judgment for defendant Greene, plaintiff has appealed to this court.

## Opinion.

It must be kept in mind that upon plaintiff was the burden of proof to establish its right of recovery, and that whether or not defendant Greene, who had possession of the car at the time of the filing of this suit, had a right of possession or not, is immaterial unless plaintiff shows a right of possession and of foreclosure. We think the evidence is sufficient to show that from the time when the draft was paid, amounting to some $9,000, and this car, along with a number of other cars, was delivered to said defendant Greene, or to his agent Carroll-Dillard Company, the car was in possession of said Carroll-Dillard Company, or of said Greene, and was daily exposed for sale in the regular course of business of said Carroll-Dillard Company, and that under article 4000, Revised Civil Statutes 1925, the mortgage attempted to be given by said Corey to said Carroll-Dillard Company was fraudulent and void.

Miss Beatrice Berry, stenographer for the Carroll-Dillard Company, testified: That she knew the car in question, and had seen the car in stock and offered for sale in the place of business of the Carroll-Dillard Company every day except during the time it was used for demonstration, until the company quit business. That she knew E. J. Corey, and that he never used the car involved in this controversy to her knowledge; at least she never saw him use it.

The witness Roy O. Carroll testified: That he was sales manager and vice president of the Carroll-Dillard Company, and that Mr. Guy E. Dillard was president of the company. That he did not know where Mr. Dillard was now; that he had not seen him since January 4th or 5th. That the Carroll-Dillard Company closed their business on December 27th or 29th. That he knew E. J. Corey, and that he was the stepfather of Dillard. That he saw him around the place of business for some two weeks. That he never met him. That he understood that Corey was preparing to open up a "parts shop" in connection with the Carroll-Dillard Company, but that

he never did open up such shop. That he did not know where Corey was now; that he understood that he left Fort Worth and went to New Orleans some time about January 1, 1928. That he knew the car in question, and that outside of the time it had been taken off of the floor for 15 or 20 minutes for the purpose of demonstration, the car remained on the floor of the company all the time. That Dr. Greene finally took the car out, and up to such taking the car was exposed for sale all of the time. That he did not believe that the speedometer on the car had ever been connected or any tools put in the car. That no license had been purchased for the car.

Dr. Greene testified that the car in question had been on the sales floor of the Carroll-Dillard Company all the time from the time it was originally placed there until he took possession of it. Several other witnesses testified to the same facts. Therefore we cannot disturb the judgment on this ground.

■■ We do not think there is anything in the contention of appellant that the evidence is insufficient to show, as found by the trial court, that Dr. Green took up the bill of lading of the shipment of cars, one of which cars was the car in question, on October 25, 1927, and that he took possession of said car at said time, and thereafter held possession either personally or by his agents until he took charge of the car and removed it to his home. The evidence shows that Dr. Greene gave to the officers of the Carroll-Dillard Company a check in payment of the invoice price of these cars, and that they and he went to the bank, where the bill of lading was held, to which was attached a draft, and delivered the check to the bank, and that the bank turned over to him or them the bill of lading. It is claimed that the finding is erroneous in that the evidence shows that the officers of the Carroll-Dillard Company took up the bill of lading. Certainly, if a man does a thing through his agent, he acts for himself. Qui facit per alium facit per se.

■ Appellant urges that a mortgage on goods daily exposed for sale is valid as between the parties thereto, and cites the case of Clark & Boice Lumber Co. v. Commercial National Bank of Jefferson (Tex. Civ. App.) 200 S. W. 197, writ of error denied, as authority therefor. In the cited case, the Jefferson Cotton Oil & Fertilizer Company was engaged in the business of buying cotton seed and manufacturing same into oil, meal, and hulls. Desiring to purchase cotton seed for that purpose, it borrowed the sum of $4,000 from the Commercial National Bank of Jefferson and executed its note. It executed a chattel mortgage on the seed to be purchased. During the course of the construction of the oil mill, the company became indebted to the appellant Clark & Boice Lumber Company for lumber and material furnished in the erection of the necessary buildings, and gave a note for a part of its indebtedness; the balance being on open account. During several months of the year 1914, the oil mill company sold to the appellant lumber company certain cotton seed meal. Instead of paying cash for the meal, the lumber company gave the oil mill company credit for the price of the meal on its indebtedness. The trial court found as a fact that the meal sold and delivered to the lumber company was that upon which the appellee had a mortgage, constituting a conversion. The lumber company, on an appeal of the case to the Texarkana Court of Civil Appeals, contended that the description of the mortgaged property in the mortgage relied upon was insufficient; and, second, that it was an effort to incumber goods, wares, and merchandise remaining in the hands of the mortgagor and daily exposed for sale and in violation of the provisions of article 4000 of the Revised Civil Statutes. The Court of Civil Appeals held that neither contention was available, and that the fact that the oil mill company occasionally sold some of the stock did not constitute a daily exposure for sale, and did not invalidate the sufficiency of the mortgage. We do not question the conclusions reached by the Texarkana court in the cited case, but do not see that they are of any benefit to appellant here. In the first place, the facts are different in the two cases. In the cited case the court evidently found and predicated its judgment on the findings that the goods were not exposed to daily sale; here the court found, which finding is amply supported by the testimony, that the car in question was exposed daily for sale. The cited case might have been affirmed on the ground that the cotton seed, upon which the mortgage was given, did not consist of goods, wares, and merchandise daily exposed for sale, inasmuch as said cotton seed were a part of the company's stock in trade from which it manufactured cotton seed meal, cotton seed oil, and hulls. Materials and ingredients used by a manufacturer for the manufacture of an article different from any of the ingredients does not constitute merchandise, and therefore is not within the meaning of the Bulk Sales Law. Article 4001, Revised Statutes of 1925; Hobart Mfg. Co. v. Joyce & Mitchell (Tex. Civ. App.) 4 S.W.(2d) 185.

■■ Moreover, the controversy in the instant case is not between the parties to the purported mortgage, but between the mortgagee and Greene, who claimed to have owned the cars by virtue of a purchase thereof, and he merely gave to his agents, the Carroll-Dillard Company, the right to sell said cars for cash. Before appellant could prevail in this case, it would have to show that the rights reserved in this mortgage were superior to the rights of said Greene as owner of the cars. The burden of proof was on appel-

lant to establish this fact, and it could not do so by proving the execution of a mort-gage on goods, wares, and merchandise daily exposed for sale.

For the reasons stated, appellant's assignments are overruled and the judgment is affirmed.